BERANBAUM MENKEN BEN-ASHER & BIERMAN, LLP
By: Mark H. Bierman, Esq.
Attorneys for Plaintiff
80 Pine Street, 32ⁿᵈ Flr.
New York, New York 10005
(212) 509-1616

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NAGY EDRISSE,

                        Plaintiff,

       - against -

MARRIOTT INTERNATIONAL, INC., and FRANK BERRY,
GEORGE PALLADINO, MICHAEL STENGEL,
DAVID TRAINA, STEVEN BATA, ROBERT MILLER
AND JANET MIELCAREK Individually and as
Employers.

                     Defendants.

------------------------------------------------------------------X

Docket No.
09 Civ.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

## I. INTRODUCTION

1. Plaintiff, Nagy Edrisse ("Plaintiff" or "Edrisse"), brings this action against Defendants

Marriott International, Inc. ("Marriott"), Frank Berry ("Berry"), George Palladino ("Palladino"),

Michael Stengel ("Stengel"), David Traina ("Traina"), Steven Bata ("Bata"), Robert Miller

("Miller") and Janet Mielcarek ("Mielcarek") (the foregoing individual defendants are hereafter

collectively referred to as "the Individual Defendants") (the Individual Defendants and Marriott

being hereafter referred to as "the Defendants"), because Defendants unlawfully discriminated

and retaliated against Plaintiff in the terms and conditions of his employment and terminated his

employment as a waiter/server ("Server") in a hotel restaurant owned and operated by Marriott. Plaintiff brings this action to remedy discrimination in the terms and conditions of his employment on the basis of his nationality, ethnicity, religion and age in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, 1985 and 1986 ("The Civil Rights Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§2000(e) et seq. ("Title VII"), the New York City Human Rights Law, as amended, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("City Human Rights Law") and the New York State Human Rights Law, as amended, New York Executive Law §296 et seq. ("State Human Rights Law").

2. Plaintiff further brings this action to remedy unlawful retaliation by Defendants in violation of Title VII, and The Civil Rights Act, 42 U.S.C. § 1981, the City Human Rights Law, and the State Human Rights Law.

3. Plaintiff further brings this action for damages and injunctive relief under The Civil Rights Act, 42 U.S.C. §§1985 and 1986.

4. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages and other appropriate legal and equitable relief pursuant to Title VII, the Civil Rights Act, the City Human Rights Law, and the State Human Rights Law.

## II. JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked under 28 U.S.C. §1331 and 28 U.S.C. §§1343(a)(1) through (4).

6. Jurisdiction over Plaintiff's civil rights claims is pursuant to 42 U.S.C. §§1981, 1985 and 1986 and 42 U.S.C. 2000e *et. seq.* This court has supplemental jurisdiction over Plaintiff's claims under the City Human Rights Law and the State Human Rights Law pursuant

to 28 U.S.C. § 1367.

7. Venue is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c) as the judicial district where the corporate defendant doing business and is subject to the personal jurisdiction of the court, where the individual defendants may be found, and the place where a substantial part of the events or omissions giving rise to the claims occurred.

8. Prior hereto, on or about June 20, 2006, Plaintiff filed a charge of discrimination No. 10112345 with the State Division of Human Rights ("SDHR") against Marriott alleging discriminatory employment practices on account of Plaintiff's race, nationality, religion and creed. Plaintiff also cross-filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), under EEOC Charge No. 16G-2006-03513.

9. On or about April 7, 2009 the SDHR issued an order of dismissal for administrative convenience. On or about April 2, 2009, plaintiff received a Notice of Right to Sue Letter issued by the EEOC with regard to Charge No. 16G-2006-03513.

### III. PARTIES

10. Plaintiff **Nagy Edrisse** ("Plaintiff" or "Edrisse") is a natural person and resident of the City and State of New York, residing at 7401 Ridge Boulevard, Apt. 5B, Brooklyn, New York 11209. Plaintiff was employed by Marriott as a Server at Marriott's The View Restaurant ("The View") located at Marriott's New York Marriott Marquis Times Square hotel located at 1535 Broadway, New York, N.Y. 10036 ("the Marriott Marquis Hotel"), from the commencement of his employment with Marriott until his employment was terminated on or about June 29, 2006. Plaintiff was born in Egypt, his religion is Muslim, he is of Arab descent

and he is fifty-one years of age.

11. Defendant Marriott International, Inc. is, and at all times relevant herein was, on information and belief, a corporation organized and existing under the laws of the state of Delaware, is registered as a foreign corporation in the State of New York, operates the Marriott Marquis Hotel at 1535 Broadway, New York, New York, 10036, and is regularly engaged in business in the state of New York.

12. On information and belief, Marriott owns, operates and manages the Marriott Marquis Hotel.

13. Defendant **Frank Berry** is a natural person and at all times relevant hereto was the Restaurant Manager of The View and an employee of Marriott. On information and belief Berry resides in New York, New York. On information and belief, Berry is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

14. Defendant **George Palladino** is a natural person and at all times relevant hereto was the Regional Director of Human Resources and an employee of Marriott. On information and belief, Palladino maintains his office in New York, New York and resides in the state of New York. On information and belief, Palladino is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

15. Defendant **Michael Stengel** is a natural person and at all times relevant hereto was the General Manager of the Marriott Marquis Hotel and an employee of Marriott. On information and belief Stengel resides at 1535 Broadway, New York, New York 10036. On information and belief, Stengel is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

– 4 –

16. Defendant **David Traina** is a natural person and at all times relevant hereto was the Director of Human Resources for Marriott and an employee of Marriott. On information and belief Traina resides in the state of New Jersey. On information and belief, Traina is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

17. Defendant **Steven Bata** is a natural person and at all times relevant hereto was the Director of Food and Beverage for Marriott and an employee of Marriott. On information and belief Bata resides in New Jersey and maintains his office in the Marriott Financial Center. On information and belief, Bata is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

18. Defendant **Robert Miller** is a natural person and at all times relevant hereto was the Assistant Director of Food and Beverage for Marriott and an employee of Marriott with offices in Uniondale, New York. On information and belief Miller resides in Nassau County, New York. On information and belief, Miller is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

19. Defendant **Janet Mielcarek** is a natural person and at all times relevant hereto was The View Complex Director for Marriott and an employee of Marriott. On information and belief Mielcarek resides in Maryland where she is employed at Marriott's head quarters. On information and belief, Mielcarek is Caucasian, is not of the Muslim faith, and is not from Egypt or the Middle East.

## IV. FACTS

20. Plaintiff, was employed with Marriott from in or about May 16, 1989 until he was notified that his employment was being terminated by notice dated on or about June 29, 2006.

21. On information and belief, each of the Defendants are employers within the meaning of Title VII, the State Human Rights Law and/or the City Human Rights Law.

22. On information and belief, each of the Individual Defendants, at all relevant times were employees of Marriott and had managerial or supervisory duties.

23. Plaintiff, after commencing his employment with Marriott and during the time that he was employed by Marriott, satisfactorily performed the duties and obligations of his position.

24. Throughout the period of his employment with Marriott. Plaintiff's time, attendance, and performance have met or exceeded the requirements of his position.

25. Plaintiff throughout the course of his employment performed the duties associated with his employment, met the responsibilities of such employment, and was otherwise qualified for such employment.

26. On information and belief, Marriott generally hired and retained as Servers at The View that were under forty years of age and that were not of Arab or Middle Eastern descent or Muslim.

27.     On information and belief, Plaintiff was one of the oldest Servers employed at The View in 2006.

28. In or about January or February, 2006, Berry, a Caucasian, non-Muslim American, was transferred and assigned by Marriott as the Restaurant Manager of The View.

29. Shortly after arriving at the Marquis Marriott Berry encouraged an environment that was designed to ridicule, humiliate or make fun at the expense of persons of Arab and Middle Eastern descent and persons of the Muslim faith.

30. Berry frequently engaged in conduct that is offensive or humiliating to persons of

Arab and Middle Eastern descent and persons of the Muslim faith.

31. Berry frequently openly used or exploited racial, ethnic and religious stereo types of persons of Arab and Middle Eastern descent and persons of the Muslim faith in front of the Plaintiff and others.

32. Berry frequently covered his face up to his eyes with a table cloth or napkin pretending it was a traditional Islamic veil or face cover while making comments about Arab and/or Muslim women and prefacing is comments with "your women."

33. Berry on several occasions told Plaintiff and another Muslim Arab co-worker that he felt safer when he knows where they are, when he scheduled them to work together, suggesting that Muslims and Arabs can be expected to engage in acts of terrorism.

34. Berry was also overheard by other employees referring to Plaintiff as a "terrorists."

35. Berry and other managers frequently used and encouraged other employees to use racial, ethnic and religious comments aimed at other ethnic minorities as well. The managers acted as if the use of such terms was acceptable.

36. The discriminatory conduct was engaged in by Marriott's managers and was otherwise known to Marriott. Marriott. Marriott not only failed to take reasonable steps to address to eliminate the discriminatory conduct, it directly participated in it.

37. As a result, use of ethnic and racial terms was widespread by managers and staff employees at The View.

38. No disciplinary action had been taken against Berry or other managers who frequently used racial and ethnic terms or slurs, nor was disciplinary action taken against non-Arab and non-Muslim employees who had used such terms given managements use of such

terms, and management having communicated to employees that there was no objection to the use of such terms in the work place and the fact that management and staff routinely used such terms and that no disciplinary action was ever taken as a result.

39.   Prior to Berry's transfer to The View as Restaurant Manager, and in the seventeen years that Plaintiff was employed by Marriott as a full time employee prior to June 6, 2006, Plaintiff had not been disciplined by Marriott on the basis used by Defendants to support the warnings and suspension that occurred in June 2006.

40.  Marriott had previously adopted and implemented, and purportedly had in place at the time that Berry allegedly asked plaintiff not to use a certain ethnic term, a progressive employee discipline system that was required to be applied to all employees.

41.   Under Marriott's progressive disciplinary policy, discipline of employees for perceived violation of company rules or policies, misconduct or other claims of unsatisfactory conduct, increased depending on the number of prior disciplinary action taken within the previous twelve month period.

42.  Under Marriott's progressive disciplinary policies, with certain exceptions not relevant here, an employee is first required to be given a "verbal warning". In the event that after the giving the of the verbal warning, a further violation is alleged to have occurred within a twelve month period, a written warning may be issued. In the event that after the giving of the first written warning, a further violation is alleged to have taken place within a twelve month period, a second written warning is to be issued. At the time of the second warning or upon the occurrence of another offense within the one year period, the manager may issue a "Day of Decision" write up, which affords the employee the opportunity to commit him or her self to

meeting the company's requirements. In the event that another violation thereafter occurs within the twelve month period, the employee may be suspended for a period of time.

43.    It is not until after each of the preceding disciplinary steps are followed, that the company may employ the next stage of discipline if the employee is determined to have engaged in a further act incident or offense.

44. Under Marriott's disciplinary employment policies, written warnings expire after one year period of time.

45.    No prior warnings, suspensions or claims had been made by Defendants that Plaintiff had violated any company rules or policies in the one year period prior to June 6, 2006.

46. Plaintiff had not received any warnings or suspensions in the one year period preceding June 6, 2006.

47. On or about an especially slow business night at The View on June 6, 2006 when few customers were in the restaurant, a person believed to have been a customer of the restaurant left behind a small spray bottle. Plaintiff and another employee, allegedly engaged in a brief moment where each sprayed the other once with the spray bottle. Later the other employee sprayed Plaintiff a second time.

48. Berry spoke with Plaintiff in an abusive, unprofessional, condescending, threatening and humiliating manner the night of June 6, 2006 about the use of the spray bottle.

49. Plaintiff became extremely distraught in response to Berry's conduct. While speaking with Berry, and in a moment of extreme tension caused by Berry, Plaintiff used a term that Berry and other managers and employees had commonly used in the work place with respect to African-Americans.

-9-

50. On information and belief, Defendants did not discipline the other employee who was not Arab, Egyptian, Muslim or from the Middle East, and other employees who were not Arab, Egyptian, Muslim or from the Middle East had not been disciplined for conduct in this manner.

51.  Berry told Plaintiff on June 6, 2006, that if that type of alleged conduct happened again, Plaintiff could receive a written warning.

52.  Plaintiff stated at that time that he thought that he was being unfairly singled out. On information and belief, no other non-Arab, non-Muslim, non Middle-Eastern employee had been warned or otherwise disciplined for this type of alleged conduct.

53.   Plaintiff was then scheduled to be off from work for the next two days, June 7 and 8, 2006. When Plaintiff returned to work on June 9, 2006, Plaintiff was given a company form entitled Employment Performance Record signed by Berry.

54. On June 9, 2006, Berry handed him a document entitled Employment Performance Record which listed at the top headings representing the company's progressive disciplinary policy as follows:

Verbal Warning   Written Warning   2nd Written Warning   Suspension

The type of action was to be checked depending on where the employee was in the twelve month disciplinary period .

55. The form, which listed Frank Berry as the manager/supervisor who signed the form, contained an "x" under the heading "WRITTEN WARNING". The form also contained the statement: This is the 1st written warning issued to this Associate within the past 12 months.

56. The form contained an alleged  description of the circumstances giving rise to the

action indicated on the form. The form gave as the basis for the warning the same acts that allegedly occurred on June 6, 2006 and which were used by Berry to justify the verbal warning on that date.

57. The form stated that "[f]urther infractions" of the kind described could lead up to suspension/termination by the General Manager.

58. Berry did not explain to Plaintiff how three days after Berry gave a first verbal warning, a written warning was being issued for the same alleged conduct that was the subject of the verbal warning.

59. Plaintiff refused to sign the document and expressed that he felt that he was being discriminated against.

60. After June 9, 2006, plaintiff was scheduled to be off from work for the following two days.

61. Plaintiff returned to work two days later to work as scheduled.

62. Upon his return to work after his two scheduled days off, Plaintiff was handed another document described as Employment Performance Record dated June 9. 2006 ("the Suspension Notice"). The Suspension Notice which also contained Berry's name but was unsigned, was given to Plaintiff by Mielcarek.

63. Listed on th Suspension Document under "circumstances resulting in the above action" an alleged account of the same alleged June 6, 2008 incident, but this time with the facts varied and contained additional self-serving language about Marriott's supposed anti-discrimination policies that appeared to have been asserted to be used in the event of a claim of discrimination by Plaintiff.

64. On information and belief, Mielcarek was involved in the decision to alter the previous written warning notice and the decision to issue the Suspension Notice along with Stengel, Miller and Bata.

65. The Suspension Notice contained the same language as the first written warning that "[f]urther infractions" of the kind described could lead up to suspension/termination by the General Manager.

66. The Suspension Notice, although based on the same alleged conduct of June 6, 2006 that was used to justify the previous verbal warning and the later given first written warning, now checked the box under "suspension"

67. This second written form now asserted that Plaintiff was being suspended pending an investigation.

68. The Suspension Notice contained the same language as the written warning notice as follows: "This is the 1st Written warning issued to this Associate within the past 12 months."

69. The term that Berry claimed that Plaintiff used, and that was the subject of the warning and suspension notices, was one of the terms that Berry, other managers and other employees used frequently and openly in the work place. Berry himself openly used in the workplace on a weekly and sometimes even on a daily basis, the very term that he disciplined Plaintiff for using.

70. Plaintiff thereafter met with Bata on June 15th, 2006 in an effort to have the suspension rescinded and again complaining that he was being singled out in an unfair and unequal manner. Defendants refused to change the suspension.

71. Plaintiff, reasonably believing that the discipline was really a pretext for unlawful

discrimination and that the conditions were discriminatory, filed a complaint with the SHRD on

June 20, 2006 with a cross-filing on that date with the EEOC ("the . Discrimination Complaint").

72. Plaintiff reasonably believed that Defendants were engaged in conduct unlawful under

Title VII, SHRL and CHRL and reported discriminatory practices to Defendants, and filed a

complaint with the SDHR based on that reasonable belief. The SDHR issued a probable cause

finding dated January 5, 2009 with respect to the Plaintiff's claim of discrimination.

73. On information and belief, a copy of the Discrimination Complaint was promptly

sent by the SDHR after the filing by Plaintiff to Marriott.

74. On or about June 22, 2006, plaintiff met with Stengel and Traina. Plaintiff stated that

he felt that he was being discriminated against, advised them as to the discriminatory

environment, advised them that he had filed a complaint with the SDHR, and presented them

with a copy of the complaint that he had filed with the SDHR under Charge No. 10112345 and

which referred to the federal Charge No. 16GA-2006-03513.

75. Shortly after Plaintiff informed Defendants that he had filed a complaint against the

Marriott with the SDHR and the EEOC, and presented them with a copy of the discrimination

complaint, Defendants, through Bonnie Caravaglia, Marriott's Director of Associate Relations,

issued a letter dated June 29, 2006 to Plaintiff terminating his employment with Marriott.

76. The termination letter gave no ground for the termination other than "serious

misconduct."

77. Other than the incident claimed by Berry on June 6, 2006, Defendants had not

claimed any violations of company rules or polices.

78. The acts alleged to have occurred on June 6, 2006 were recognized by Berry on that

date to warrant a verbal warning only and otherwise do not fall within the definition of "serious misconduct" as that term is defined in Marriott's disciplinary policy.

79. Plaintiff thereafter "appealed" the termination through Marriott's so called "Guarantee of Fair Treatment" program.

80. Plaintiff had also notified the Marriott that he believed that he had been discriminated against and retaliated against for having filed a discrimination complaint.

81. Defendants thereafter refused to afford Plaintiff with any relief and refused to reverse the improper, unlawful discriminatory firing of the Plaintiff.

82. Defendants have retaliated against Plaintiff and have denied him opportunities for employment on the basis of his having complained of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., The Civil Rights Act, 42 U.S.C. §1981, the City Human Rights Law, and the State Human Rights Law.

83. Each of the Individual Defendants aided, abetted and assisted Marriott in discriminating and/or retaliating against the Plaintiff for having engaged in legally protected activities under federal, state and local civil rights laws and acted to facilitate, enable and/pr perpetuate the defendants' discrimination and/or retaliation against the Plaintiff.

84. Each of the Individual Defendants engaged in conduct designed to mask or conceal the unlawful discriminatory and/or retaliatory conduct against the Plaintiff.

85. Each of the Individual Defendants and Marriott knew that the written warning to and/or suspension of and/or termination of Plaintiff, was in violation of Marriott's own employment policies and was designed to circumvent civil rights laws and thereby facilitate Marriott's discriminatory and/or retaliatory conduct, and aided and abetted Marriott in

circumventing Plaintiff's rights and/or retaliating against Plaintiff.

86.  On information and belief, Stengel, Miller and Bata were directly involved in

preparing the Second Written Performance Document and altering the First Written Warning, so

as to change the action as contained in the previous warning, to a suspension of employment so

as to further the discriminatory and retaliatory practices. .

87. Miller also treated Plaintiff in a hostile and disparate manner and singled him out for

disparate treatment on account of his race, ethnicity, religion and nationality. Miller engaged in

this conduct both when he was sober as well as he appeared to be inebriated.

88. On information and belief, Bata aided and assisted Miller, the Marriott and the other

Individual Defendants to further the discriminatory and retaliatory practices.

89. Although Plaintiff met with Palladino and complained that he was being

discriminated against and retaliated against, Palladino, aided and supported Marriott and the

other Individual Defendants to further the discriminatory and retaliatory practices.

90. Defendants never afforded Plaintiff with the right of peer review as provided for by

Marriott's employment policy.

91. Defendants never claimed or intimated that Plaintiff did not perform his duties ably,

competently and satisfactorily, nor did they ever advise him of any deficiencies in his

performance of his job functions. On the contrary,  Plaintiff had been commended on his work

performance.

92. Despite being qualified for the position, and despite Plaintiff's demonstrated ability to

perform all of the duties and requirements of the position, Plaintiff's employment was suspended

and thereafter terminated.

93. Despite reasonable and diligent efforts at seeking alternative work, Plaintiff has been unable to secure comparable employment since his dismissal.

94. Defendants' conduct caused Plaintiff extreme embarrassment, humiliation, emotional distress and harm.

## V. CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

**(Title VII of the Civil Rights Act of 1964 against Marriott)**

95. Plaintiff repeats and realleges the allegations set forth above with the same force and effect as if fully set forth herein.

96. Defendants discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, nationality, ethnicity and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., by creating a hostile work environment, treating him in a disparate manner, retaliating against him for having complained about Defendants unlawful discriminatory conduct, and terminating his employment. The actions of the Individual Defendants are imputed to their employer.

97. As a direct and proximate cause of Defendants' conduct, Plaintiff has lost wages, promotional opportunities, bonuses, tips, and other benefits and compensation, and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of Defendants' discriminatory and retaliatory practices. Defendants' conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct.

### AS AND FOR A SECOND CAUSE OF ACTION

**(Deprivation of Rights under 42 U.S.C. §1981, as against all Defendants)**

98. Plaintiff repeats and realleges the allegations set forth above with the same force and effect as if fully set forth herein.

99. Defendants' discriminatory and retaliatory actions against Plaintiff, discriminatory application of its disciplinary procedures with respect to Plaintiff, creation of a hostile work environment against Plaintiff, and termination of Plaintiff's employment by Defendants on account of his ancestry, race and ethnicity violated the Civil Rights Act of 1866 (42 U.S.C. §1981) as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No. 102-406.)

100. Each of the Individual Defendants were involved and took part in the discrimination and retaliation against the Plaintiff.

101. As a proximate cause of Defendants' conduct and discriminatory action, Plaintiff has suffered injury, harm and damages, and has had his contractual rights respecting his existing and future employment impaired, interfered with and/or terminated and Defendants have otherwise impaired and interfered with Plaintiff's right to make and enforce contracts including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

102. As a proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

103. Defendants' conduct is shocking, outrageous, and malicious, exceeds all bounds of acceptable behavior and is intolerable in a civilized society, and was done with conscious disregard for Plaintiff's civil rights, thereby entitling Plaintiff to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Conspiracy to Deprive Rights under 42 U.S.C. §1985, as against all Defendants)**

104. Plaintiff repeats and realleges each and every allegation contained in the paragraphs

-18-

set forth above with the same force and effect as if set forth herein.

105.    Defendants engaged in a conspiracy for the purpose of depriving plaintiff of equal protection of the laws or of equal privileges or immunities under the law, the right of free speech and the freedom of religion in violation of 42 U.S.C. § 1985.

106. Defendants acted in furtherance of a conspiracy to deprive Plaintiff of the equal protections of the law and the right to free speech and right to the free exercise of his religion on account of his race, ancestry, and ethnicity.

107.    Said defendants acted in concert to try and preclude Plaintiff from engaging in the free exercise of his constitutional rights. The Defendants then further acted in furtherance of the conspiracy.

108.    Plaintiff was and continues to be injured in his person and property and deprived of the rights of a citizen of the United States as a result of these actions.

109.    Defendants acted with class-based discriminatory animus on account of Plaintiff being or being perceived to be of Arab ancestry and descent.

110.    The Defendants collectively acted to directly or indirectly deprive Plaintiff of the equal protection of the laws, and/or of equal privileges and immunities under the laws on account of race, ancestry, ethnicity and national origin.

111.    One or more of the said Defendants that engaged in said conspiracy, did or caused to be done, an act in furtherance of the object of such conspiracy by seeking to keep Plaintiff from continuing in gainful employment, causing or participating in discriminatory discipline, retaliating against Plaintiff and acting to exclude persons of Arab descent from being employed, and engaging in other conduct in furtherance of the conspiracy, thereby depriving Plaintiff of person and property,

-19-

depriving him the right to engage in and pursue his livelihood, and depriving them of having and exercising rights or privileges as a citizen of the United States.

112.   Plaintiff has been denied employment opportunities and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of Defendants' discriminatory practices. Defendants' conduct was and continues to be wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling plaintiff to punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Neglect or Refusal to Prevent Deprivation of Rights under 42 U.S.C. §1986, as against all Defendants)

113.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

114.   Defendants, having knowledge that the wrongs conspired to for the purpose of depriving plaintiff of equal protection of the laws or of equal privileges or immunities under the law, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused to do so in violation of 42 U.S.C. §1986.

115.   Plaintiff has been denied employment, has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of defendants' unlawful conduct. Defendants' conduct was and continues to be wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling plaintiffs to punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (New York City Human Rights Law, NYC Admin. Cod §8-101 et. seq.)

116. Plaintiff repeats and realleges the allegations set forth above with the same force and effect as if fully set forth herein.

117. Defendants discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, nationality, ethnicity, religion and age in violation of the City Human Rights Law, by creating a hostile work environment, treating him in a disparate manner, retaliating against him for having complained about Defendants unlawful discriminatory conduct, and terminating his employment.

118. The actions of the Individual Defendants are imputed to their employer.

119. The Individual Defendants and each of them participated in the conduct giving rise to Plaintiff's claim of discrimination, acted as a supervisor or manager, participated in the discriminatory practices including creating or assisting in the creation of or permitting to exist a hostile work environment, the disciplining of plaintiff in a discriminatory manner, and/or acted to aid in the termination of Plaintiff for legally impermissible reasons, and therefore aided and abetted in the discrimination against Plaintiff and otherwise violated the City Human Rights Law.

120.    The Individual Defendants, and each of them, aided and abetted said discriminatory conduct and/or incited, compelled or coerced the doing of any of the acts forbidden under the City Human Rights Law, or to attempted to do so.

121.    In addition, the Individual Defendants had at all relevant times had the power to hire and fire employees of Marriott. As a result, they are liable for their discriminatory conduct as

employers under the City Human Rights Law.

122.    As a direct and proximate cause of Defendants' conduct,  Plaintiff has lost wages, promotional opportunities, bonuses, tips, and other benefits and compensation, and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of Defendants' discriminatory and retaliatory practices.

123.    Defendants' conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct.

124.    Defendants' conduct is shocking, outrageous, and malicious, exceeds all bounds of acceptable behavior and is intolerable in a civilized society,  and was done with conscious disregard for Plaintiff's civil rights, thereby entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

**(New York State Human Rights Law, Executive Law, §290 *et. seq.*
as against all defendants.)**

125. Plaintiff repeats and realleges the allegations set forth above with the same force and effect as if fully set forth herein.

126. Defendants discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, nationality, ethnicity, religion and age in violation of the State Human Rights Law, by creating a hostile work environment, treating him in a disparate manner, retaliating against him for having complained about Defendants unlawful discriminatory conduct, and terminating his employment.

127. The actions of the Individual Defendants are imputed to their employer.

128. The Individual Defendants and each fo them participated in the conduct giving rise to Plaintiff's claim of discrimination, acted as a supervisor or manager, participated in the

-22-

discriminatory practices including creating or assisting in the creation of or permitting to exist a

hostile work environment, the disciplining of plaintiff in a discriminatory manner, and/or acted

to aid in the termination of Plaintiff for legally impermissible reasons, and therefore aided and

abetted in the discrimination against Plaintiff and otherwise violated the State Human Rights

Law.

129. The Individual Defendants, and each of them, aided and abetted said discriminatory

conduct and/or incited, compelled or coerced the doing of any of the acts forbidden under the

State Human Rights Law, or to attempted to do so.

130. In addition, the Individual Defendants had at all relevant times had the power to hire

and fire employees of Marriott. As a result, they are liable for their discriminatory conduct as

employers under the State Human Rights Law.

131. As a direct and proximate cause of Defendants' conduct, Plaintiff has lost wages,

promotional opportunities, bonuses, tips, and other benefits and compensation, and has suffered

and continues to suffer mental anguish, emotional distress, humiliation and other compensable

injuries as a result of Defendants' discriminatory and retaliatory practices. Defendants' conduct

was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or

discourage such conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief as follows:

a) Judgment ordering Marriott to reinstate the Plaintiff in Marriott's employ in the same

position as Plaintiff previously held with the same benefits and promotion opportunities;

b) Judgment against Defendants for all past salary, normal salary increases, and other

compensation and benefits from June 13, 2006 to the date of judgment together with interest.

c) Judgment against Defendants for front pay based on all wages, benefits, bonuses and other compensation that Plaintiff would have received had his employment not been terminated, together with all increases as can reasonably be determined.

d) Judgment against Defendants for all compensatory damages sustained by Plaintiff as the result of Defendants discriminatory conduct, including, but not limited to, damages for emotional and mental distress, embarrassment and humiliation suffered by Plaintiff, and relocation and rental costs;

e) Judgment against Defendants for punitive damages as against each of the defendants and against such individuals individually and in their corporate capacities in such amounts relative to their resources and income as will serve to deter such conduct in the future;

f) Judgment for interest (including pre-judgment interest) and reasonable attorney's fees.

g) Declaring that the acts and practices complained herein are in violation of The Civil Rights Act of 1964 as amended, The Civil Rights Act of 1866, as amended, the State Human Rights law, the City Human Rights law, and

h) Such other and further relief as is available at law and in equity and as is just and proper together with the costs and disbursements of this action.

## DEMAND FOR A TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all claims stated herein.

Dated: New York, New York
       June 2, 2009

                              BERANBAUM MENKEN
                              BEN-ASHER & BIERMAN, LLP
                              Attorneys for Plaintiff

By: _____

                              Mark H. Bierman, Esq. (MHB:4696)
                              80 Pine Street, 32nd Flr..
                              New York, New York 10005
                              Tel:   212-509-1616