UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NAGY EDRISSE,

                Plaintiff,

      -against-                                09 Civ. 5141 (LAK)

MARRIOTT INTERNATIONAL, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

        Mark H. Bierman
        BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP
        *Attorney for Plaintiff*

        Michael J. Volpe
        VENABLE LLP
        *Attorney for Defendant Marriott International, Inc., and the*
        *Individual Defendants Except Frank Berry*

        Arthur J. Robb
        CLIFTON BUDD & DEMARIA, LLP
        *Attorney for Defendant Frank Berry*

LEWIS A. KAPLAN, *District Judge*.

        Plaintiff Nagy Edrisse brings this action for workplace discrimination against Marriott International, Inc. ("Marriott"), six current Marriott employees (the "Individual Marriott Defendants") and one former Marriott employee, Frank Berry. The gravamen of the complaint is that defendants subjected plaintiff, a former Marriott restaurant server who is a black-Arab Muslim from Egypt, to a hostile work environment, and then disciplined and ultimately terminated him, on account of his

race, nationality, ethnicity, religion and age. Edrisse claims also that they did so in retaliation for his complaint of discrimination. He sues Marriott under Title VII, and he sues all defendants under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1]

Defendants move for summary judgment dismissing the complaint.

*Facts*

The Court assumes familiarity with the pleadings and evidence of record. Given the issues raised by these motions, however, some discussion of the facts is necessary.

Plaintiff began working for the New York Marriott Marquis in 1989.[2] He worked as a waiter at the Marquis's restaurant "The View" from 1993 or 1994 until his termination in June 2006.[3] There is evidence that plaintiff was a qualified and well-regarded server during that period.[4]

In early 2006, Marriott promoted defendant Berry, previously one of plaintiff's fellow servers, to manager at The View.[5] Thereafter, Berry allegedly subjected plaintiff to a hostile work environment, frequently mocking plaintiff on account of his racial, ethnic and religious

---

[1] Plaintiff has withdrawn claims under 42 U.S.C. §§ 1985 and 1986. *See* Pl. Mem. [DI 49] ("Pl. Mem.") at 1 n.2.

[2] Pl. Dep. [DI 32 Ex. V] ("Pl. Dep.") at 28.

[3] *Id.* at 35.

[4] *See* Batta Dep. [DI 32 Ex. W] ("Batta Dep.") at 88-89; Stengel Dep. [DI 46 Ex. 11] ("Stengel Dep.") at 77-78.

[5] Berry Dep. [DI 28 Ex. C, DI 46 Ex. 3] ("Berry Dep.") at 11, 31, 35.

characteristics.[6]  Plaintiff did not then complain about this alleged conduct.[7]

On the evening of June 6, 2006, there was an incident at The View involving plaintiff and another server, Beatrice Morgan, who is black.  Although there is conflicting evidence as to precisely what transpired, it appears that plaintiff discovered a bottle of scented water that had been left behind by a guest and sprayed some of it on or around Morgan.[8]  Morgan complained to Berry, who chastised plaintiff and threatened to report him.[9]

Later that night, plaintiff went to Berry's office to complain that Morgan without provocation had sprayed plaintiff with the scented water after the earlier incident.  During the ensuing exchange between plaintiff and Berry, plaintiff at least once used a racially derogatory word in referring to the scented water as "n----- spray."[10]  Plaintiff asserts that employees and managers at the Marquis and The View, including Berry, used that word openly and frequently.[11]  Although two other Marriott employees were in Berry's office at this time, it does not appear that Morgan or any other black person besides plaintiff was present when plaintiff used this language.[12]

After plaintiff left Berry's office, Berry reported the incident to defendant Mielcarek,

---

[6] See Cpt. [DI 1] ("Cpt.") ¶¶ 28-34.

[7] Pl. Dep. at 48; Pl. Mem. at 10.

[8] See Pl. Dep. at 60-69; Cpt. ¶ 47.

[9] Pl. Dep. at 64-67.

[10] See Berry Dep. at 73; Pl. Dep. at 72-73.

[11] See Pl. Decl. [DI 47] ("Pl. Decl.") ¶ 5; Clarke Decl. [DI 48] ("Clarke Decl.") ¶¶ 6-7.

[12] See Berry Mem. [DI 29] at 5; Marriott Mem. [DI 33] ("Marriott Mem.") at 9; Pl. Mem. at 14.

4

The View's complex director, who instructed Berry to issue plaintiff a written warning, which Berry did when plaintiff next returned to work on June 9.[13] A copy of the warning was forwarded to Human Resources ("HR"), where defendant Caravaglia, assistant director of HR, reviewed it and brought it to the attention of the HR director, defendant Traina.[14] Based on HR's investigation, the department recommended that plaintiff be suspended pending investigation and a decision on whether he should be terminated.[15] HR therefore instructed Mielcarek to suspend plaintiff, which she did in a meeting with him on June 13.[16]

Appealing his suspension, plaintiff met on June 15 with defendant Batta, the Marquis's director of food and beverage.[17] Plaintiff there admitted to having used the offensive language. Batta then recommended plaintiff's termination.[18]

On June 20, plaintiff filed a charge of discrimination against Marriott with the State Division of Human Rights ("SDHR").[19] The SDHR forwarded plaintiff's complaint to Marriott that

---

[13] Berry Dep. at 82-84; Mielcarek Dep. [DI 32 Ex. BB] ("Mielcarek Dep.") at 68-70; Pl. Dep. at 78.

[14] Caravaglia Dep. [DI 32 Ex. Y] ("Caravaglia Dep.") at 80-85.

[15] Traina Dep. [DI 32 Ex. X] ("Traina Dep.") at 177-78.

[16] Mielcarek Dep. at 75-86.

[17] Batta Dep. at 104-05.

[18] *Id.* at 140-41.

[19] SDHR Cpt. [DI 46 Ex. 30] ("SDHR Cpt.").

same day.[20] Although it is not clear exactly when Marriott received it, the company learned of plaintiff's SDHR complaint no later than June 26, when plaintiff met with Traina and defendant Stengel, the Marquis's general manager, and showed them a copy.[21] At that meeting, plaintiff admitted once more that he had used the phrase "n----- spray." The following day, Stengel terminated him over the telephone.[22] Plaintiff appealed his termination to defendant Palladino, senior vice president of labor employee relations, who upheld the decision.[23]

## Discussion

### I. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[24] Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[25] In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of

---

[20] SDHR Event History [DI 46 Ex. 31].

[21] Pl. Dep. at 124, 128-29.

[22] Stengel Dep. at 120; Pl. Dep. at 137-38.

[23] Pl. Dep. at 141-45.

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *see also* FED. R. CIV. P. 56(c).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

fact for trial in order to avoid summary judgment.[26]

*II. Hostile Work Environment Claims*

Plaintiff claims that Berry "engag[ed] in overt hostile acts of discrimination towards" plaintiff upon Berry's promotion in 2006 to manager of The View.[27] Those acts allegedly "included efforts to embarrass, humiliate and denigrate [plaintiff] on account of his racial, ethnic and religious background."[28]

"'In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"[29] "[T]he misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."[30]

---

[26] *See, e.g., Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

[27] Pl. Mem. at 8.

[28] *Id.*

[29] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (internal citations omitted)) (stating the standard for Title VII and 42 U.S.C. § 1981 claims). The same standard applies to claims under the NYSHRL. *See Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 609 (2d Cir. 2006). The NYCHRL provides a broader basis for liability, *see Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp.2d 317, 340 (S.D.N.Y. 2010), so to the extent these claims survive summary judgment under the other schemes, they survive under the city statute.

[30] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

7

In this case, there is evidence that Berry repeatedly mocked the appearance of Muslim women by draping a napkin across his face,[31] referred to plaintiff as a terrorist[32] and intimated that plaintiff would blow up the Marquis building.[33] There is evidence also from which a jury could find that Berry's behavior reasonably disturbed plaintiff.[34] Accordingly, plaintiff has demonstrated that there are genuine issues of material fact as to whether he was subjected to a hostile work environment by Berry and, by extension, Marriott. He has failed, however, to make out a hostile work environment claim against any of the Individual Marriott Defendants, so all such claims against those defendants must be dismissed.[35]

Marriott nevertheless seeks dismissal of plaintiff's hostile work environment claims against it under the *Faragher/Ellerth* defense. *Faragher*[36] and *Ellerth*[37] considered the circumstances in which an employer is vicariously liable for a supervisor's sexual harassment of an employee.

---

[31] *See* Pl. Dep. at 152-53, 160; Netzel Dep. [DI 46 Ex. 8] ("Netzel Dep.") at 31; Clarke Decl. ¶ 9.

[32] *See* Pl. Dep. at 193; Clarke Decl. ¶ 10.

[33] *See* Pl. Dep. at 153, 156-60.

[34] *See* Netzel Dep. at 31, 33; Pl. Decl. ¶ 4.

[35] Plaintiff's deposition testimony that "'[t]errorist' I heard . . . sometimes [from] Miller," Pl. Dep. at 193, does not suffice to make out a hostile work environment claim against Miller. Even the NYCHRL, the most liberal statute at issue, does not permit recovery for "petty slights and trivial inconsistencies," *see Williams v. N.Y. City Housing Auth.*, 61 A.D.3d 62, 79-80, 872 N.Y.S.2d 27, 40-41 (1st Dep't 2009), and plaintiff's bald accusation does not support a reasonable finding that Miller's conduct amounted to more than that. Notably, plaintiff cites no evidence that Miller used the term "terrorist" to or about him, or in any other offensive manner.

[36] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[37] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Applying principles of agency, the Court held that the harassing behavior of a supervisor is imputed to the employer,[38] but that the employer has an affirmative defense to liability where (1) it exercised reasonable care to prevent and correct harassment, and (2) the plaintiff-employee unreasonably failed to take advantage of the opportunities provided by the employer.[39] The Court noted, however, that this defense is not available "when the supervisor's harassment culminates in a tangible employment action."[40]

Plaintiff argues that Marriott cannot avail itself of the *Faragher/Ellerth* defense because his discipline was a tangible employment action.[41] In order to avoid an employer's assertion of *Faragher/Ellerth* on this basis, however, there must be a nexus between the employment action and the harassing conduct at issue.[42] This is so because harassment typically falls outside the scope of a supervisor's duty, negating vicarious liability, but when the harassment includes or results in a tangible employment action, the employer as a legal matter has taken part in the harassing conduct.

Here, there is no apparent connection between the harassing conduct, Berry's alleged bigoted remarks, and the tangible employment action, Marriott's discipline of plaintiff. It is not

---

[38] *Faragher*, 524 U.S. at 802-03; *see also Mack v. Otis Elevator, Co.*, 326 F.3d 116, 125-26 (2d Cir.), *cert. denied*, 540 U.S. 1016 (2003); *Drew v. Plaza Const. Corp.*, 688 F. Supp.2d 270, 279-80 (S.D.N.Y. 2010).

[39] *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

[40] *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 808.

[41] *See* Pl. Mem. at 65.

[42] *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 101-02 (2d Cir. 2006); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 103 n.3 (2d Cir. 2010) (the *Faragher/Ellerth* defense is available if "any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment").

enough that the supervisor who created the alleged hostile work environment played a role in the employment action. That Berry's remarks are evidence of bigotry, which may have driven or factored into plaintiff's discipline, may well support a claim of discrimination against Marriott.[43] But Marriott cannot be said to have participated in Berry's harassing conduct by taking action against plaintiff unrelated to that conduct.

Marriott has satisfied the defense's elements as a matter of law. "An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive."[44] Marriott's anti-harassment policy, in force during the events of this case, expressly prohibited the sort of harassment of which plaintiff complains, and the company provided numerous avenues, including anonymous hotlines, by which employees could raise harassment grievances to persons including and besides harassing supervisors.[45] And it is uncontroverted that plaintiff did not pursue these opportunities,[46] which in these circumstances was unreasonable. Accordingly, plaintiff's hostile work environment claims against Marriott under Title VII, 42 U.S.C. § 1981 and the NYSHRL must be dismissed. The New York Court of Appeals, however, has held

---

[43] See infra pp. 11-12.

[44] Ferraro, 440 F.3d at 102 (citing Mack, 326 F.3d at 128).

[45] See Marriott Associate Resource Guide [DI 32 Ex. C] at 6, 30-31, 43-45; Pl. Handbook Receipt [DI 32 Ex. D].

[46] Pl. Dep. at 48; Pl. Mem. at 10. That plaintiff raised harassment concerns while appealing his suspension does not change the fact that he unreasonably failed to do so at any point when the conduct at issue was occurring. Cf. Adams v. O'Reilly Automotive, Inc., 538 F.3d 926, 932 (8th Cir. 2008).

that the *Faragher/Ellerth* defense does not apply to claims brought under the NYCHRL.[47] Plaintiff's hostile work environment claim against Marriott under that statute therefore survives.

III. *Discrimination Claims*

Plaintiff claims that he was disciplined and ultimately terminated on account of his race, nationality, ethnicity, religion and age, and not – as Marriott contends – because of his use of derogatory language.

At the outset, the Court notes that there is no evidence that could support a finding that Marriott discriminated against plaintiff because of his age. All such claims must be dismissed.

The Court considers the remaining discrimination claims under the familiar *McDonnell Douglas* framework.[48] The plaintiff first must make out a *prima facie* case of discrimination. If the plaintiff succeeds, the burden of production shifts to the defendants, who must articulate a legitimate, non-discriminatory reason for taking the adverse employment action at issue. The defendants are entitled to summary judgment based upon such a showing unless the plaintiff, at the third step, can point to admissible evidence sufficient to support a finding that the defendants' proffered and legitimate reason is in fact pretext for unlawful discrimination.[49] This general

---

[47] *See generally Zakrzewska v. New School*, 14 N.Y.3d 469 (2010).

[48] Plaintiff's argument that *McDonnell Douglas* is inapplicable due to direct evidence of Marriott's discrimination fails. Plaintiff has offered only circumstantial evidence that his discipline was discriminatory.

[49] *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138, 141 (2d Cir. 2008).

11

framework applies to all of plaintiff's remaining discrimination claims.[50]

To establish a *prima facie* case of discrimination, plaintiff must demonstrate: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."[51]

Only the third and fourth elements are at issue here. The third clearly has been satisfied. Plaintiff suffered adverse employment actions first when he was suspended without pay[52] and again when he was terminated.

The fourth element also is satisfied. Unlawful discriminatory bias on the part of anyone meaningfully involved in the process leading to an adverse employment action suffices to support an inference of discriminatory intent.[53] There is ample evidence that Berry harbored animus towards Arabs and Muslims.[54] And the evidence is sufficient to support a finding that he played a meaningful role in Marriott's decision to suspend plaintiff without pay. HR's review of the June 6

---

[50] *See Blanc v. Sagem Morpo, Inc.*, No. 09-3762-cv, 2010 WL 3836155, at *2 (2d Cir. Oct. 1, 2010); *Herbert v. City of N.Y.*, --- F. Supp.2d ----, 2010 WL 3955577, at *8 n.7 (S.D.N.Y. Oct. 8, 2010) (collecting cases).

[51] *Holcomb*, 521 F.3d at 138 (2d Cir. 2008).

[52] The Marriott Defendants argue that "[s]uspension is not a form of discipline at the Marquis" because "an employee will either be terminated or brought back to work and compensated for the suspension period." Marriott Mem. at 7. But suspension without pay, even where the lost wages ultimately are reimbursed, constitutes an adverse employment action. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001).

[53] *See Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 125-26 (2d Cir. 2004); *Mugavero v. Arms Acres, Inc.*, 680 F. Supp.2d 544, 566 (S.D.N.Y. 2010).

[54] *See supra* p. 7.

incident, which led to plaintiff's suspension, focused in large part on Berry's narration of the events as recited first in the written warning to plaintiff and later in a conversation Berry had with Caravaglia.[55] In consequence, there is a genuine issue of material fact as to whether discriminatory animus on Berry's part tainted his account of and actions with respect to the June 6 incident. That in turn calls into question the propriety of plaintiff's suspension.

Defendants have articulated a legitimate basis for plaintiff's suspension – his use of racially derogatory language in violation of Marriott's anti-harassment policy.[56] Nevertheless, defendants are not entitled to summary judgment on plaintiff's discrimination claims, as there is sufficient evidence to allow a reasonable jury to conclude that this proffered basis was a pretext for unlawful discrimination. A reasonable jury might reach such a conclusion after reviewing, for example, the evidence of discrimination on the part of Berry, the arguable implausibility that a black employee was disciplined pursuant to an anti-harassment policy for using the word "n-----," apparently out of the presence of any other black person,[57] and the evidence that others at the Marquis – Berry, who initiated plaintiff's discipline, chief among them[58] – used that language openly

---

[55] *See* Caravaglia Dep. at 85-92; Written Warning [DI 46 Ex. 25]; Marriott Mem. at 10-11.

[56] *See* Marriott Mem. at 19.

[57] Stengel appears to have defended his decision to terminate plaintiff on the ground that plaintiff used the language at issue to or in front of Morgan, *see* Stengel Dep. at 120-21, even though the evidence all but establishes that she was not in Berry's office during that exchange, *see* Berry Dep. at 79; Pl. Dep. at 69-70.

[58] *See* Pl. Decl. ¶ 5; Clarke Decl. ¶¶ 6-7.

and frequently.[59]

Accordingly, plaintiff's discrimination claims survive summary judgment with respect to defendants Marriott and Berry.[60] Plaintiff has failed, however, to make out a case of discrimination under any of the statutes at issue against any Individual Marriott Defendant, so all such claims against those defendants must be dismissed.

IV.   Retaliation Claims

Plaintiff claims also that Marriott terminated him at least partly in retaliation for his complaint that the company unlawfully was discriminating against him.

The Court applies the same *McDonnell Douglas* burden-shifting framework in reviewing plaintiff's retaliation claims.[61] In order to make out a *prima facie* case of retaliation, "the plaintiff must first present . . . evidence sufficient to permit a rational trier of fact to find [1] that [he] 'engaged in protected participation or opposition . . . , [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal

---

[59] Plaintiff's evidence of disparate treatment may not by itself satisfy the fourth element of his *prima facie* discrimination case due to insufficient evidence that he and the others who used this language were similarly situated in all material respects. *See Goldman v. Admin. for Children's Servs.*, No. 04 Civ. 7890, 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007). But defendants have offered no reason why a jury, deciding the issue of pretext at step three of the *McDonnell Douglas* analysis, could not consider, along with all of the other evidence, indications of widespread use of the language for which plaintiff ostensibly was suspended and terminated.

[60] *See Franchitti v. Bloomberg, L.P.*, 03 Civ. 7496, 2004 WL 2366183, at *4 (S.D.N.Y. Oct. 20, 2004) (individuals who were not "decision makers" may be held personally liable if they were "instrumental in achieving th[e] result" at issue).

[61] *See Blanc*, 2010 WL 3836155, at *1-2.

connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'"[62]

The first three elements are satisfied. Plaintiff engaged in protected activity when he filed the SDHR complaint on June 20.[63] Marriott became aware of this activity when plaintiff showed a copy of that complaint to defendants Stengel and Traina at their June 26 meeting, if not earlier. And Marriott took adverse action against plaintiff when Stengel terminated him on June 27.

As for the fourth element, plaintiff's causation evidence, while perhaps weak, suffices to establish a genuine issue of material fact as to retaliatory motive. Stengel has admitted that he decided to terminate plaintiff "immediately at the meeting" in which plaintiff showed him the SDHR complaint.[64] Although such temporal proximity evidence alone perhaps could not support an inference of causation in a case like this,[65] plaintiff has testified also that, upon seeing the SDHR complaint, Stengel's mood changed and he appeared "[b]othered, disturbed," "threatening" and "very

---

[62] *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208-09 (2d Cir. 1990)).

[63] *See generally* SDHR Cpt. Evidence that plaintiff complained as early as June 13 that he was "not being treated fairly . . . and that [he] was being singled out by Berry," Pl. Decl. ¶ 9, or that he complained on June 15 that he was being "treated differently" from Morgan, Batta Dep. at 130, 145-47, does not suffice to establish protected activity. Plaintiff has cited no evidence that, on either occasion, he complained – or even thought – that unlawful discrimination was at work. *See Moncrief v. N.Y. Public Library*, 343 Fed. Appx. 627, 629 (2d Cir. 2009).

[64] Stengel Dep. at 99.

[65] *See Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp.2d 317, 336 (S.D.N.Y. 2010) ("'[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before plaintiff had ever engaged in any protected activity, an inference of retaliation *does not* arise.'" (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.), *cert. denied*, 534 U.S. 951 (2001))).

angry."[66] "This alleged display of retaliatory animus by the very individual who made the decision" to terminate plaintiff "is enough to satisfy the causation requirement at the prima facie stage."[67] There is evidence that defendants Traina and Miller also were upset about plaintiff's SDHR complaint.[68]

And there is sufficient evidence to allow a reasonable jury to find that Marriott's proffered basis for plaintiff's termination was a pretext for unlawful retaliation. "[T]he question at step three is whether, considering all the evidence . . . in the light most favorable to the non-moving party, a reasonable trier of fact could conclude that a retaliatory motive was a factor in the decision."[69] Based on the evidence of, *inter alia*, temporal proximity and retaliatory animus on the part of Marriott's upper management, a reasonable jury could make the requisite finding of retaliatory motive.[70] Whether, as Marriott contends, the complaint "played absolutely no role in [Stengel's termination] decision"[71] is a question for the jury.

Plaintiff's retaliation claims therefore survive summary judgment with respect to

---

[66] Pl. Dep. at 130-32, 334.

[67] *Martin v. State Univ. of N.Y.*, 704 F. Supp.2d 202, 230-31 (E.D.N.Y. 2010) (footnote omitted).

[68] Pl. Dep. at 334; Netzel Dep. at 46-47.

[69] *Morisseau v. DLA Piper*, 532 F. Supp.2d 595, 615 (S.D.N.Y. 2008), *aff'd*, 355 Fed. App'x 487 (2d Cir. 2009).

[70] See *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.) ("Even if there were no dispute as to the impropriety of [plaintiff's] conduct, the evidence of retaliatory animus on [the employer's] part would suffice to defeat the summary judgment motion."), *cert. denied*, 484 U.S. 965 (1987).

[71] Marriott Reply Mem. [DI 54] at 7.

defendants Stengel and Marriott, but are dismissed against all other defendants on account of plaintiff's failure to make out a *prima facie* case of retaliation under any of the statutes at issue as to any of them.[72]

V.  Damages

Finally, the Marriott Defendants move for summary judgment with respect to plaintiff's claim for damages in the form of back pay. Their argument is premised on the notion that plaintiff "was gainfully employed" at the Beauville Corporation ("Beauville") after he was terminated from Marriott, and that he perjured himself by testifying to the contrary.[73] But the evidence that they cite for this proposition – plaintiff's 2006 tax returns – establishes only that plaintiff worked for Beauville at some point during 2006,[74] which is entirely consistent with plaintiff's contention that his Beauville employment ended in July 2006, shortly after he was terminated from Marriott,[75] and that he "has been unable to secure comparable employment since his

---

[72] Plaintiff has not demonstrated that any other defendant took action against him under circumstances supporting an inference of retaliation. Although defendant Palladino upheld Stengel's decision to terminate plaintiff, plaintiff has cited no evidence suggesting that Palladino even was aware of the SDHR complaint. *But see* Palladino Dep. [DI 46 Ex. 9] at 38 (indicating that Palladino never saw the complaint). Nor does the evidence suggest that plaintiff complained to Palladino of a hostile work environment, but only that offensive language was commonplace at the Marquis. *See id.* at 61-64. And, although there is evidence that Miller and Traina were upset about the complaint, plaintiff has not shown that either took any action against him after learning of it.

[73] *See* Marriott Mem. at 31-33.

[74] *See* Pl. 2006 W-2 [DI 32 Ex. U].

[75] *See* Pl. Mem. at 67-68.

dismissal."[76]  Accordingly, Marriott is not entitled to summary judgment on plaintiff's damages claim.

### Conclusion

For the foregoing reasons, (1) Berry's motion for summary judgment of dismissal [DI 28] is granted to the extent that all of plaintiff's retaliation claims against him are dismissed, (2) the Marriott Defendants' motion for summary judgment of dismissal [DI 32] is granted to the extent that all of plaintiff's hostile work environment claims against Marriot, except the claim brought under the NYCHRL, are dismissed, all of plaintiff's hostile work environment and discrimination claims against the Individual Marriott Defendants are dismissed, and all of plaintiff's retaliation claims against the Individual Marriott Defendants other than Stengel are dismissed, and (3) all of plaintiff's age discrimination claims are dismissed.  The motions are denied in all other respects.

SO ORDERED.

Dated:     December 13, 2010

_____
Lewis A. Kaplan
United States District Judge

---

[76] Cpt. ¶ 93.